**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**CHRISTINE P. O'HEARN**
UNITED STATES DISTRICT JUDGE

MITCHELL H. COHEN BUILDING &
U.S. COURTHOUSE
4TH & COOPER STREETS
ROOM 6050
CAMDEN, NJ 08101
856-757-5167

June 8, 2026

<u>**VIA CM/ECF**</u>

Kevin Douglas Jarvis
Thomas Sinclair
Steven J. Bushinsky
O'BRIEN, BELLAND & BUSHINSKY, LLC
509 S. Lenola Road, Building 6
Moorestown, NJ 08057

Joseph Mark Profy
GALLUCI & PROFY LLC
1812 Berlin Road
Cherry Hill, NJ 08003

Richard D. Galluci, Jr.
GALLUCI & PROFY LLC
1020 Laurel Oak Road, Suite 301
Voorhees, NJ 08043

<u>**LETTER OPINION**</u>

Re:     **Trustees of the United Food and Commercial Workers Local 152 Health and
        Welfare Fund,** *et al.* **v. B.I. Foods, LLC** *d/b/a Value Added Food Group*
        <u>**Civil Action No. 23-22637**</u>

Dear Counsel:

        This matter comes before the Court on the Motion for Summary Judgment ("Motion") filed
by Plaintiffs, Trustees of the United Food and Commercial Workers Local 152 Health and Welfare
Fund (the "Fund") and United Food and Commercial Workers Union Local 152 (the "Union," and
jointly with the Fund, "Plaintiffs"). (ECF No. 54). The Court did not hear oral argument pursuant
to Local Rule 78.1. For the reasons that follow, the Motion is **GRANTED IN PART** and **DENIED
IN PART**.

## I.       Factual Background and Procedural History

The Fund is an employee benefit plan established and maintained pursuant to the Labor Management Relations Act ("LMRA") and Employee Retirement Income Security Act ("ERISA"). (Am. Compl., ECF No. 17 at ¶ 7). The Union is an unincorporated labor organization within the meaning of the LMRA and ERISA. (*Id.* ¶ 13). Together, Plaintiffs seek to recover allegedly delinquent fringe benefit contributions and penalties owed under a collective bargaining agreement ("CBA") and related agreements between them and Defendant B.I. Foods d/b/a Value Added Food Group ("Defendant"). (*See* Pls.' Br., ECF No. 54-1 at 1–2).

The CBA at issue requires Defendant to make contributions to the Fund on behalf of eligible employees, whom the parties agree consists of Union members covered by the CBA. (Pls.' Statement of Material Facts ("Pls.' SOMF"), ECF No. 54-2 at ¶¶ 1–4; Def.'s Statement of Material Facts ("Def.'s SOMF"), ECF No. 59-2 at ¶ 43). Specifically, the CBA covers "drivers, shipping and receiving and production Employees located at [Defendant's] Pennsauken, New Jersey facility . . . ." (Decl. of Ken Okerson ("Okerson Decl.") Ex. A, ECF No. 54-5 at 5). For any other employees, Defendant is not obligated to remit contributions. To that end, the CBA explicitly excludes "salesmen, timekeepers, quality inspectors, maintenance employee[s], mechanics, lead maintenance men, office and clerical employees, administrative employees, guards and confidential, managerial and supervisory employees, as defined in the Act."[1] (*Id.*).

The CBA also obligates Defendant to abide by a Declaration of Trust ("Trust Agreement"). (Pls.' SOMF, ECF No. 54-2 at ¶ 5; *see* Okerson Decl. Ex. D, ECF No. 54-5 at 46–73). The Trust Agreement authorizes the Fund's Trustees to adopt a delinquency collection policy; the adopted policy here allows the Fund to seek delinquent contributions, interest, penalties, attorneys' fees, and any other remedy available under ERISA ("Collection Policy"). (Pls.' SOMF, ECF No. 54-2 at ¶¶ 6–7). Under the Collection Policy, contributions are due on the last day of the month in which an employee performs covered work and become delinquent the following day. (*Id.* ¶ 9; *see* Okerson Decl. Ex. E, ECF No. 54-5 at 74–87). To ensure accuracy of contributions to the Fund, the Collection Policy grants the Trustees the discretion to decide when to audit Defendant. (Pls.' SOMF, ECF No. 54-2 at ¶ 15). If found to be delinquent on contributions, Defendant is obligated to pay certain penalties, including interest, liquidated damages, attorneys' fees and costs, and audit costs where an audit reveals underpayment above specified thresholds. (*Id.* ¶¶ 10–16).

This litigation concerns two payroll audits performed on behalf of the Fund by Tri-State Administrators, Inc. ("Tri-State"), a third-party company. (*See id.* ¶¶ 18–19). The first audit covered the May 2020 through December 2021 payroll period ("First Audit"),[2] and the second covered January 1, 2022 through July 31, 2023 ("Second Audit"; together, the "Payroll Audits"). (*Id.* ¶¶ 20, 30). It is unclear what documents Tri-State used to formulate the Payroll Audits. But

---

[1] The "Act" as used in the CBA is not a defined term therein.

[2] Plaintiffs note that this audit is mislabeled as covering January 1, 2020 through December 31, 2021. (Pls.' SOMF, ECF No. 54-2 at ¶ 20 n.1). This discrepancy in labeling has no bearing on the Court's disposition.

for both audits, Tri-State sent preliminary findings to Defendant and requested a written response within ten business days if Defendant disagreed with any findings. (*Id.* ¶¶ 20–23, 30–33). Defendant did not respond to either of the preliminary Payroll Audits. (*Id.* ¶¶ 23, 33).

Tri-State then issued final audit reports. The final First Audit stated that Defendant failed to remit $138,317.47 in contributions, $16,152.18 in interest, and $526.22 in audit costs, for a combined demand of $154,995.87. (*Id.* ¶¶ 24–27). Defendant disputes that those amounts are correct. (Def.'s Responsive Statement of Material Facts ("Def.'s RSOMF"), ECF No. 56-1 at ¶¶ 26–27). The final Second Audit stated that Defendant failed to remit $117,471.45 in contributions, $9,259.24 in interest, and $1,095.00 in audit costs, for a combined demand of $127,825.69. (Pls.' SOMF, ECF No. 54-2 at ¶¶ 34–37). Here too, Defendant disputes that those amounts are correct. (Def.'s RSOMF, ECF No. 56-1 at ¶¶ 36–39).

In disputing the Payroll Audits' accuracy, Defendant first relies on a declaration from its accounting manager and payroll coordinator, Denise Rappleye ("Rappleye"). (Def.'s Br., ECF No. 56 at 14; Def.'s Ex. D ("Rappleye Decl."), ECF No. 56-5 at ¶ 1). Rappleye states that she reviewed the Payroll Audits performed by Tri-State and concluded that the Payroll Audits "include required contributions for employees who were not eligible because they were not even members of the bargaining unit under the [CBA]." (Rappleye Decl., ECF No. 56-5 at ¶ 4). "By way of example," Rappleye names four individuals—two salaried supervisors, a quality-control employee, and a maintenance employee—who were included in the Payroll Audits but are, by the terms of the CBA, excluded from the bargaining unit. (*Id.* ¶ 5). Defendant also relies on deposition testimony of Richard Tarantino ("Tarantino"), a partner in Defendant's organization. (Def.'s Br., ECF No. 56 at 14; Def.'s Ex. C ("Tarantino Dep."), ECF No. 56-4 at 9:20–10:4). Tarantino similarly testified that the Payroll Audits are wrong because certain employees were included in Tri-State's accounting that are explicitly excluded by the CBA. (*See* Tarantino Dep., ECF No. 56-4 at 45:1–49:17).

Plaintiffs initiated this action on November 27, 2023 seeking to recover these delinquent contributions. (Compl., ECF No. 1). They filed an Amended Complaint on April 4, 2024, asserting three claims: Count One, brought by the Fund, alleges violation of ERISA §§ 502 and 515 for Defendant's alleged failure to remit contributions required under the CBA; Count Two, brought by the Union and Fund, alleges violation of the CBA and LMRA § 301 for the same failure to remit contributions; and Count Three, brought by the Union and Fund, alleges that Defendant failed to pay penalties assessed under the CBA and related documents for the periods at issue. (Am. Compl., ECF No. 17 ¶¶ 26–49). Plaintiffs filed the instant Motion on November 14, 2025. (ECF No. 54). Defendant filed its opposition on December 22, 2025. (ECF No. 56).

## II.    Legal Standard

Courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015)

3

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346 (quoting *Anderson*, 477 U.S. at 255).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 252). The non-moving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotation omitted).

### III.    Discussion

Plaintiffs move for summary judgment on Defendant's alleged failure to make contributions to the Fund in violation of ERISA § 515, 29 U.S.C. § 1145.[3] They seek damages based on the Payroll Audits and the penalties authorized by the CBA. For the reasons that follow, the Court will grant the Motion as to Defendant's liability but deny it as to damages.

On liability, Plaintiffs are entitled to summary judgment because it is undisputed Defendant is required by the CBA and related agreements to make contributions to the Fund on behalf of eligible employees. *See* 29 U.S.C. § 1145; *Illinois Conf. of Teamsters & Emps. Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1365 (7th Cir. 1995) ("In the absence of any genuine issue of material fact as to [the defendant's] obligation under the Agreement to make contributions to the Fund, the district court appropriately granted summary judgment as to liability."); *Bourgal v. Robco Contracting Enters., Ltd.*, 969 F. Supp. 854, 865 (E.D.N.Y. 1997) (granting summary judgment on liability where "the defendants [were] liable for the payment of contributions under the collective bargaining and trust agreements"), *aff'd*, 182 F.3d 898 (2d Cir. 1999). Defendant does not otherwise make a meaningful argument as to liability.

Having found Defendant liable for the payment of contributions under the CBA and related agreements, the Court turns to damages. Plaintiffs argue that summary judgment on damages is warranted because Defendant failed to produce records that ERISA required it to maintain, rendering the Payroll Audits presumptively accurate and shifting the burden to Defendant to "provide evidence that the fund's calculations of damages are not accurate." (*See* Pls.' Reply Br., ECF No. 59 at 6–11).

---

[3]    The Motion focuses exclusively on the ERISA § 515 claim asserted in Count I of the Amended Complaint. Count I is asserted only by the Fund, not by the Union. Count II, by contrast, is asserted by both the Fund and the Union under LMRA § 301 and likewise seeks to enforce Defendant's obligations under the CBA. The Court's liability analysis therefore applies with equal force to Count II, notwithstanding that Count I is brought solely by the Fund. In any event, because the Fund exists for the benefit of Union employees, any recovery by the Fund on Count I would presumably inure to the Union's benefit.

4

The burden-shifting framework Plaintiffs invoke reflects the view, adopted by several courts, that because ERISA requires employers to maintain records sufficient to determine the amount of contributions owed, the employer is ordinarily "in the best position to know" that amount. *Demolition Workers Union v. Mackroyce Contracting Corp.*, No. 97-4094, 2000 WL 297244, at *7 (S.D.N.Y. Mar. 22, 2000) (quotation omitted); *see Combs v. King*, 764 F.2d 818, 827 (11th Cir. 1985) (adopting the framework); *Brick Masons Pension Tr. v. Indus. Fence & Supply*, 839 F.2d 1333, 1337–38 (9th Cir. 1988) (same); *Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 695 (6th Cir. 1994) (same). Imposing a corresponding evidentiary burden on the employer therefore "reflects the employer's duties under ERISA" and advances ERISA's remedial purposes. *Demolition Workers*, 2000 WL 297244, at *7 (quotation omitted); *see Brick Masons*, 839 F.2d at 1338 ("An employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required."). In practice, the framework operates as follows:

> First, the burden is on the employee benefit trust funds to come forward with evidence casting doubt on the accuracy or adequacy of the employer's records. Once the court finds that an employer has failed to maintain adequate records, the burden shifts to the employer to come forward with evidence of the precise amount of covered work that was performed so that the contributions can be computed. If an employer fails to maintain adequate records and fails to come forward with other evidence of covered work, then the employee benefit funds are entitled to approximate the contributions owed to them.

*Composition Roofers Union Loc. No. 30 Welfare Tr. Fund v. L.A. Kennedy, Inc.*, No. 93-1558, 1996 WL 220975, at *6 (E.D. Pa. May 2, 1996) (citations omitted).

There is no controlling Third Circuit authority adopting the burden-shifting framework in ERISA cases like this one. District courts within this Circuit, however, have applied it. *See Composition Roofers*, 1996 WL 220975, at *6 (citing *Combs*, 764 F.2d at 826) ("If an employer fails to maintain adequate records and fails to come forward with other evidence of covered work, then the employee benefit funds are entitled to approximate the contributions owed to them."). Even so, courts have recognized that the framework is not readily applied at the summary judgment stage. *See Int'l Bhd. of Elec. Workers Loc. Union No. 380 v. State Elec.*, No. 04-2610, 2006 WL 2228863, at *7 (E.D. Pa. Aug. 3, 2006) ("Courts which have adopted that framework have been reluctant to apply it at the summary judgment stage . . . .").

Even assuming that the burden-shifting framework applies, Plaintiffs are not entitled to summary judgment on damages for two reasons. First, Plaintiffs have not established the necessary predicate for shifting the burden: that Defendant failed to maintain adequate records. Plaintiffs identify no factual assertions, supported by record evidence, that cast doubt on the accuracy or adequacy of Defendant's recordkeeping practices. At most, Plaintiffs' Statement of Material Facts establishes that Tri-State sent Defendant preliminary audit findings, that Defendant did not respond, and that Tri-State later issued the final Payroll Audits. (Pls.' SOMF, ECF No. 54-2 ¶¶

18–40). But Plaintiffs do not identify what records they, or Tri-State, requested or reviewed *before* issuing the preliminary audits; what ERISA-required records Defendant failed to maintain or produce; or how any such failure affected their ability to calculate the required amount of contributions. To be sure, one might infer some deficiency in Defendant's recordkeeping from its failure to respond to Tri-State's preliminary Payroll Audits, or its admission that the final Payroll Audits were based "on old information that existed before Defendant took over as the owner and operator of the business . . . ." (Def.'s SOMF, ECF No. 59-2 at ¶ 47). But those inferences cannot carry Plaintiffs' burden at summary judgment, where all reasonable inferences must be drawn in favor of Defendant as the non-moving party. *See Int'l Union v. Skinner Engine Co.*, 188 F.3d 130, 137 (3d Cir. 1999). Because Plaintiffs have not shown that Defendant failed to maintain or produce records necessary to calculate delinquent contributions in the first instance, the burden of production does not shift to Defendant to disprove Plaintiffs' damages calculation.

Second, even if Plaintiffs had established a recordkeeping deficiency sufficient to shift the burden of production to Defendant, Defendant has produced sufficient evidence to rebut Plaintiffs' damages calculation. Defendant relies on the Rappleye declaration and the Tarantino testimony, "[t]he combination of" which, Defendant argues, "create material disputed issues of fact as to the existence of inconsistencies and mistakes in the Payroll Audits." (Def.'s Br., ECF No. 56 at 14). The Court agrees.

The Rappleye declaration identifies several categories of employees included in the Payroll Audits for whom no delinquent contributions were owed under the CBA: two salaried supervisors, a quality-control employee, and a maintenance employee. (Def.'s Ex. D, ECF No. 56-5 ¶¶ 4–5). The CBA categorically excludes "supervisory employees," "quality inspectors," and "maintenance employee[s]" from the bargaining unit, and therefore does not require contributions on their behalf. (Okerson Decl. Ex. A, ECF No. 54-5 at 5). The Tarantino testimony supports the same point. After reviewing the Second Audit and the CBA, Tarantino testified that the Second Audit was inaccurate because it included contributions for employees, including maintenance staff, for whom Defendant was not required to remit contributions under the CBA. (Tarantino Dep., ECF No. 56-4 at 45:1–49:17; *see* Okerson Decl. Ex. A, ECF No. 54-5 at 5). This evidence—that certain employees categorically excluded by the CBA were nevertheless included in the Payroll Audits—creates a genuine dispute as to the accuracy of Plaintiffs' asserted delinquent contributions and, by extension, the penalties calculated from those contributions. *See Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps. v. Murphy's Tire, Inc.*, No. 97-814, 1998 WL 865594, at *9 (N.D.N.Y. Dec. 9, 1998) (denying summary judgment where two affidavits "assert facts that would cast doubt upon the auditor's calculation"); *Sullivan v. Aloisio*, No. 95-7456, 1997 WL 587653, at *4–5 (N.D. Ill. Sep. 17, 1997) (denying summary judgment where defendant's affidavit created a factual dispute by stating that he performed non-covered work); *State Electric*, 2006 WL 2228863, at *7 (noting that "an employer's affidavit disputing the benefit funds' damage calculation is sufficient to avoid summary judgment"). The Court may not resolve these factual disputes on summary judgment. Plaintiffs' Motion is therefore denied as to damages.

Finally, the Court briefly addresses Plaintiffs' request that, at any damages hearing, the burden "should shift to the Defendant to prove that Defendant is not obligated to make benefit

contributions on behalf of individuals named in the audits." (Pls.' Reply Br., ECF No. 59 at 14). Because Plaintiffs have not established the threshold showing necessary to shift the burden to Defendant, granting that request is not warranted. In any event, even if Plaintiffs had made that threshold showing, their request to shift the burden at trial would still fail. Courts applying the burden-shifting framework on summary judgment have recognized that the framework does not alter the ultimate allocation of the burdens at trial. *See N.E.C.A./Local 145 I.B.E.W. Pension Plan v. Mausser*, No. 18-04045, 2023 WL 1785235, at *6 (C.D. Ill. Feb. 6, 2023) (quoting *Chi. Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 265 (7th Cir. 2003), for the proposition that, "[o]nce a case comes to trial, . . . the burden-shifting structure . . . falls away"), *aff'd sub nom.*, *Trs. of N.E.C.A./Local 145 I.B.E.W. Pension Plan v. Mausser*, No. 24-1472, 2024 WL 4647936 (7th Cir. Nov. 1, 2024). This Court therefore declines to alter Plaintiffs' burdens at a damages hearing.

In sum, Plaintiffs are entitled to summary judgment on liability for Defendant's failure to remit contributions owed under the CBA and relevant agreements. They are not, however, entitled to summary judgment on damages.

### IV.    Conclusion

For the foregoing reasons, Plaintiffs' Motion, (ECF No. 54), is **GRANTED IN PART** and **DENIED IN PART**. Judgment is hereby entered in favor of Plaintiffs as to Defendant's liability. The Motion is denied as to the amount of damages Defendant owes to Plaintiffs.

**CHRISTINE P. O'HEARN**
**United States District Judge**